FILED

2004 JAN 21 P 1: 17

US DISTRICT COURT
BRIDGEPORT CT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY,<br>Plaintiff,<br><br>v.<br><br>STATE OF CONNECTICUT, DEPARTMENT OF PUBLIC UTILITY CONTROL, ET AL.<br>Defendants. | CIVIL ACTION NO.<br>3:02CV01022 (JCH)<br><br><br><br><br><br><br><br><br>JANUARY 16, 2004 |

**PAETEC COMMUNICATIONS, INC.'S REPLY TO THE
SOUTHERN NEW ENGLAND TELEPHONE COMPANY'S OPPOSITION TO
PAETEC'S MOTION FOR SUMMARY JUDGMENT AND
PAETEC'S OPPOSITION TO SNET'S MOTION TO EXTEND THE INITIAL STAY**

I.   **INTRODUCTION**

Pursuant to this Court's Ruling on Motions For Summary Judgment, dated September 30, 2003, 285 F.Supp.2d 252 (D. Conn. 2003)("*Court Decision*"), PAETEC Communications, Inc. ("PAETEC") moved the Court, on December 30, 2003, to Terminate the Initial Stay entered by the Court and renewed its Motion for Summary Judgment filed on January 22, 2003, and its Opposition to the Southern New England Telephone Company's Motion for Summary Judgment.  PAETEC

350183

requested a termination of the initial stay and renewed its Motion for Summary Judgment based on the Final Decision in Docket No. 01-08-19RE02, Petition of PaeTec Communications, Inc. for Resolution of Disagreement with Southern New England Telephone Company ("*Second Final Decision*"), issued on December 17, 2003, by the State of Connecticut Department of Public Utility Control ("DPUC"). A copy of *the Second Final Decision* was attached to PAETEC's pleading.

The DPUC rendered the *Second Final Decision* after the Court allowed the Parties to request that the DPUC reopen the proceeding to consider the issues raised in this case by the Southern New England Telephone Company ("SNET") in light of Section 3.2.1 of the Amendment to the Interconnection Agreement filed with the DPUC on January 8, 2001, and approved by it on April 18, 2001.

SNET's Motion to Extend the Initial Stay and Opposition to PAETEC's Motion for Summary Judgment, filed with this Court on January 9, 2004 ("SNET Motion"), first misstates the question this Court posed for the DPUC in the *Court Decision* and then disingenuously claims that the DPUC failed to specifically address a question never posed by this Court in a desperate attempt to gain more time, via an additional stay, to raise new arguments after the DPUC rejected its initial arguments. PAETEC hereby opposes this obvious delay and will demonstrate that even if the Court had posed the question to the DPUC, as framed anew by SNET, the Amendment to the Interconnection Agreement would also require summary judgment to enter in favor of PAETEC.

**II.     The *Court's Decision* of September 30, 2002**

The Court was concerned that initially the DPUC did not explicitly "consider" or "interpret" Section 3.2.1 of the Amendment, because the DPUC's Decision did not discuss Section 3.2.1 or the issue of the construction of its carve out of "interLATA toll." In light of the DPUC's comparative expertise on interconnection agreements, and the reservation to state commissions of the power to interpret pre-existing interconnection agreements to determine whether the parties made the type of traffic in dispute subject to reciprocal compensation, the Court stayed this action to allow the DPUC to reopen the proceeding to consider the issue in light of Section 3.2.1 of the Amendment.[1] The result of this reopened proceeding was the Second Final Decision which analyzes and interprets Section 3.2.1.

**III.    SNET's Motion Is Plagued by Misstatements of both the *Court Decision* and the DPUC's Decisions**

SNET, in its motion, attempts to reframe the issue by terminological inexactitude. The question as to whether "virtual FX" traffic as defined in Section 3.1 of the Amendment was excluded by the Section 3.2.1 exclusion of "interLATA toll" has been transformed by SNET into "whether InterLATA FX services are akin or otherwise the equivalent to toll services."[2]  SNET then

---

[1] *Court Decision,* 285 F.Supp.2d 252, ??? (D. Conn. 2003), slip opinion at 28-30.

[2] SNET Motion, pp. 1-2, 3, 6, 9.

disingenuously faults the DPUC for not addressing its reframed issue, even though it failed to raise this issue before the DPUC. SNET, in its motion, completely leapfrogs over the significant factual and legal differences between "virtual FX" and "interLATA FX" services, and how "the equivalent to toll services" is not the same as "interLATA toll" under Section 3.2.1. These and other defects in SNET's approach were fully addressed in PAETEC's Written Comments to the DPUC of November 19, 2003, which are attached hereto as Exhibit I.

SNET also misrepresents the DPUC's Decision in Docket No. 01-01-29, when it claims that the DPUC ignored its previous finding "that FX services are indeed equivalent to toll services."[3] The DPUC made no such finding - see the DPUC's Findings of Fact at pages 46-48 of that Decision. At most, in describing FX service, the DPUC stated at page 43 "[t]hat from a subscribers point of view, FX is a toll substitute affording callers the benefit(s) of a local call" and that "telephone calls made to FX service subscribers allow their customers to call without incurring toll charges" - it never found that FX services are "the equivalent to toll services" as now claimed by SNET. SNET compounds its deception when it inaccurately states "that FX services are indeed Telephone Toll services as [the DPUC] previously found in Docket No. 01-01-29"[4] and also claims that "FX services are toll services as they are nothing more than reverse toll."

---

[3] SNET Motion, 2, 3-4, 9-10 (citing p. 43 of the January 30, 2002 Decision in Docket 01-01-29)
[4] SNET Motion, p. 4. The DPUC made no finding that FX services are Telephone Toll in Docket No. 01-01-29 or elsewhere.

350183

4

SNET also misrepresents the Docket No. 01-01-29 holding by implying that it barred all virtual FX traffic, including PAETEC's, from reciprocal compensation. The Decision in 01-01-29 was clear (*see* p. 44) that pre-existing ILEC/CLEC interconnection agreements requiring reciprocal compensation on virtual FX traffic were binding.

### IV. The DPUC Clearly Responded to the *Court's Decision* in its *Second Final Decision* and Fully Addressed Section 3.2.1 of the Amendment

It is clear that the DPUC was cognizant of and specifically addressed the issue posed by this Court. The Summary of the *Second Final Decision* (at p. 1) eliminates all doubt on this question.

In Section III of the *Second Final Decision,* Department analysis (pages 3-4), the DPUC demonstrates that it was addressing the issue referred by the Court. It quotes Sections 3.1, 3.2, and 3.2.1 of the Amendment, explains that it did not specifically address Section 3.2.1 in its May 1, 2002 Decision because the language of Section 3.1 made that unnecessary, and then clearly states why Section 3.2.1 is not applicable.

> Section 3.2.1 excludes interLATA toll and interexchange carrier (IXC) carried intraLATA toll from total Compensable Local Traffic; *it does not exclude VFX traffic. . . .* the Parties have defined VFX traffic as a separate category; it has not been defined as interLATA toll or any type of toll service and the word "toll" has not been used in the definition. In reviewing the Amendment, the two terms, VFX and interLATA toll are not used to define the same traffic; nor has interLATA toll traffic been defined in the Amendment and/or Agreement as meeting the necessary specifications of VFX traffic in Section 3.1. Lastly, the Parties have not defined interLATA toll traffic as local for purposes of compensation; however, they have included VFX in the local category for purposes of compensation in Sections 3.1 and 3.2.
> . . .

350183

5

> In the Amendment, VFX calls, unlike toll calls, are treated as local to the subscriber and there is no separate charge. In addition, unlike interLATA toll calls, *VFX calls are not a toll service as defined in the Act and the Agreement.* Based upon Department analysis, it is clear that the Parties have differentialed VFX traffic and interLATA toll traffic, treating them differently for purposes of compensation, and the Amendment does not exclude VFX calls from total Compensable Local Traffic. (emphasis supplied).

Any fair reading of the above language shows that the DPUC addressed the issues posed by the *Court Decision* - it has analyzed and interpreted Section 3.2.1 of the Amendment. Its conclusion (¶ 3, p. 4) similarly demonstrates that the DPUC addressed and rejected the applicability of Section 3.2.1 to PAETEC's VFX traffic - holding clearly that virtual FX is not interLATA toll. Nothing more is necessary from the DPUC. The DPUC's *Second Final Decision* fully addressed the Court's concern that the DPUC had not specifically addressed the applicability of Section 3.2.1 of the Amendment. DPUC's rejection of SNET's argument is not the sin of omission which SNET alleges.

**V.     Even With SNET's Misrepresentations of the *Court's Decision* and the DPUC's Decision in Docket No. 01-01-29, the Amendment Requires Summary Judgment for PAETEC**

The Court must reject SNET's assertion that PAETEC's virtual FX is the same as traditional interLATA FX, which is a "toll substitute" or a "reverse toll service," and therefore the equivalent of "interLATA toll," and therefore excluded by Section 3.2.1 from "Total Compensable Local Traffic". SNET argues in a convoluted four-step argument that: (i) PAETEC's virtual FX traffic, because it is interLATA, is the equivalent of "interLATA FX;" (ii) interLATA FX is the equivalent of "interLATA toll" because interLATA FX can be used as a "toll substitute" or is "reverse toll"; (iii)

350183                                     6

that since interLATA toll is excluded by Section 3.2.1 then interLATA FX (the reverse toll substitute) must also be excluded; and (iv) that therefore the "virtual FX" traffic at issue must be excluded.

As PAETEC demonstrated in its Written Comments (*see* Exhibit I) and recognized by the DPUC in its *Second Final Decision,* this is just sophistry. The SNET customer placing the call to an NXX within that customer's local calling area has ordered only local exchange service in connection with the call, and is billed only for local calling by SNET under its exchange tariff. The SNET customer has not ordered and is not billed for an FX or toll service. The PAETEC ISP customer has not ordered and is not billed for an FX or toll service. Whether or not the virtual FX is used as a toll substitute does not turn the PAETEC virtual FX into a traditional SNET interLATA FX service, and clearly not into an interLATA toll service under the Interconnection Agreement, the 1996 Act, or Section 3.2.1.

Even if SNET were correct - which it is not - that for some purposes PAETEC's virtual FX service can be considered as a "toll substitute" or "the equivalent to toll services"- which it is not - the fact remains, as held by the DPUC, that Section 3.1 of the Amendment precludes any exclusion of the virtual FX traffic from mutual compensation. In absolute terms Section 3.1 states that so long as the traffic is provided in the manner specified:

such traffic ("Virtual Foreign Exchange" traffic) *shall be* rated in reference to the rate centers associated with the NXX prefixes of the calling and called parties' numbers, but *treated as Local traffic for purposes of compensation.* (Emphasis supplied)

Accordingly, SNET's "toll substitute" and "reverse toll" arguments - that PAETEC's virtual FX traffic somehow is interLATA telephone "toll" service - must fail. SNET's argument is strained and unconvincing and inconsistent with the 1996 Act. To give any credence to its claim, SNET first must demonstrate that traditional FX services are classified as "toll" services within the 1996 Act. They are not.

SNET therefore attempts to advance its argument by characterizing interLATA FX services as a "toll substitute" or "reverse toll services" or "the equivalent to toll services." SNET argues (*see* SNET Motion, p. 11) that since the party receiving the call is responsible for "toll charges" these are interLATA toll services excluded by Section 3.2.1.

This additional characterization of traditional FX service also fails as a basis for excluding virtual FX traffic under Section 3.2.1. First, nowhere does the Amendment or the underlying Interconnection Agreement define or classify virtual FX, or FX services generally, as "reverse toll services" or "the equivalent to toll services." Neither does the 1996 Act. There is no statutory or contractual support for SNET's argument that what it calls "reverse toll services" would constitute "toll" services under the 1996 Act or Section 3.2.1 of the Amendment. Second, as PAETEC informed the DPUC in its Written Comments (see Exhibit I) even if for some purposes *SNET's*

traditional FX services were to be considered as "reverse toll services"[5], PAETEC does not apply a separate per call charge to its virtual FX calls.[6]  Thus PAETEC's virtual FX calls can not be considered toll services of any kind.

Finally, Section 3.2 of the Amendment itself bars the exclusion of virtual FX.  Even if for some purposes FX services were to be considered as "reverse toll services," as argued by SNET, presumably so too would 800-type services, where the party ordering and paying for the "800"-type services and receiving the "800"-type calls is responsible for what might also be characterized as "reverse toll charges."  However, whereas "800"-type traffic is one of the explicit exclusions in Section 3.2 of the Amendment - Section 3.2.2 excludes "*Originating 8YY traffic*" from compensable local traffic eligible for reciprocal compensation -- there is no explicit exclusion of FX traffic.  The Amendment was explicit when an "equivalent to toll services", "toll substitute", or "reverse toll charge"-type service was intended to be excluded.  However, that exclusion does not include either traditional FX services or PAETEC's provisioning of virtual FX.

---

[5] It is believed that under SNET's tariffed FX service regulations, a per call charge of some type is imposed on the party receiving the FX call.
[6] PAETEC does not apply any per call charge to its virtual FX service comparable to telephone-toll-services' *separate per call charge to subscribers for exchange service,* which charge is the identifying hallmark of toll service under 47 U.S.C. §153(48).

## VI. CONCLUSION

Based on the foregoing, PAETEC respectfully requests that this Court: (1) deny SNET's motion to extend the initial stay; (2) terminate the initial stay; and (3) enter summary judgment in PAETEC's favor on Count I of SNET's Complaint dated June 13, 2002.

Respectfully Submitted,

**PAETEC COMMUNICATIONS, INC.**

By: *[signature]*
BRAD N. MONDSCHEIN, ESQ.
Fed. Bar No. ct13800
Updike, Kelly & Spellacy, P.C.
One State Street, 24th Floor
Hartford, Connecticut 06123
Telephone: (860) 548-2600
Facsimile: (860) 548-2680
E-mail: bmondschein@uks.com

Michael Goldey, Esq.
Admitted Pro Hac Vice Fed/ Bar No. ct25339
81 Highfield Road
Harrison, New York 10528
Telephone: (914) 967-3312
Facsimile: (914) 967-2183
E-Mail: m.goldey@mindspring.com

## CERTIFICATION

A copy of the foregoing has been mailed by first class mail, postage prepaid this 16th day of January, 2004, to all counsel of record as follows:

Timothy P. Jensen, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
New Haven, CT 06510-1910

Keith M. Krom, Esq.
General Attorney
The Southern New England Telephone Company,
310 Orange Street
New Haven, CT 06510

Robert L. Marconi, Esq.
Assistant Attorney General
Office of the Attorney General
10 Franklin Square
New Britain, CT 06051


By: /s/ Brad Mondschein
BRAD N. MONDSCHEIN, ESQ.
Updike, Kelly & Spellacy, P.C.