UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CONNECTICUT, DPUC OF PUBLIC UTIILTY CONTROL, ET AL.<br><br>Defendants. | Civil Action No. 3:02CV01022 (JCH)<br><br><br><br>JANUARY 9, 2004 |

### THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY'S MOTION TO EXTEND THE INITIAL STAY AND OPPOSITION TO PAETEC COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT

I.   INTRODUCTION

Pursuant to this Court's ruling on the respective parties' Motions for Summary Judgment, dated September 30, 2003,[1] The Southern New England Telephone Company ("SNET") respectfully moves that this Court extend the initial stay as the Connecticut Department of Public Utility Control ("DPUC") failed to specifically address the central question posed in the Court's September 30, 2003 decision – whether InterLATA FX

---

[1] C.A. No. 3-02-CV-1022 (JCH), *Southern New England Telephone Company v. State of Connecticut, DPUC, et al.*, Ruling on Motions for Summary Judgment, 2003 U.S. Dist. LEXIS 17473, 285 F. Supp.2d 252 (D. Conn. 2003) ("*Court Decision* at *___*").

services are akin or otherwise the equivalent to toll services – in its December 17, 2003 Final Decision. *See Petition of PaeTec Communications, Inc. for Resolution of Disagreement with Southern New England Telephone Company, Docket No. 01-08-19RE02*, Decision, December 17, 2003 ("Second Final Decision") and direct the DPUC to properly address this Court's directives. In addition, SNET requests that this Court deny PaeTec's Renewed Motion for Summary Judgment because it is premature as the DPUC failed to properly address the Court's September 30, 2003 directive and is incorrect as the DPUC failed to properly analyze the remaining issue currently before this court.

      Specifically, the DPUC's Second Final Decision is in error, requiring additional direction from this Court because: (1) the DPUC failed to address the central question posed in this Court's Decision– whether interLATA foreign exchange ("FX") services are equivalent to interLATA toll services; (2) *the DPUC inappropriately ignored its previous own finding that FX services are indeed equivalent to toll services*; and (3) the DPUC inappropriately relied on the definition of Telephone Toll service in finding that interLATA FX services are not toll services. Based on the above legal and factual errors, SNET respectfully submits an additional stay and order from this Court is necessary to properly address this Court's previous directives.

## II. SUMMARY OF POSITION

First, SNET maintains that the DPUC skirted and otherwise mischaracterized this Court's directive in fashioning its Second Final Decision. In its Second Final Decision, it is evident that the DPUC understood that the Federal District Court directed that the DPUC address Section 3.2.1 of the parties' Amendment, but it failed to appreciate the import of the Federal District Court's order. From SNET's perspective, this Court essentially ordered that the DPUC address SNET's argument of whether interLATA FX services are equivalent to interLATA toll.[2] This Court did not require the DPUC to define the parties' intent or to otherwise construct its interpretation of the agreement. But instead of directly addressing the District Court's mandate, the DPUC attempted to interpret the agreement, much as it did in its initial review of this proceeding. The DPUC began its analysis from the premise that FX services were compensable as local traffic under Section 3.0 of the parties' Amendment and concluded that InterLATA FX services could not, therefore, be excluded under Section 3.2.1 of the Amendment. Such an analysis is inappropriate and unnecessary as it presupposes the result and entirely ignores the central question posed.

Second, SNET submits that the DPUC ignored its own previous finding that FX services are indeed equivalent to toll services. In Docket No. 01-01-29, *Department Investigation of the Payment of Mutual Compensation for Local Calls Carried Over Foreign Exchange Service Facilities*, in an intraLATA FX context, over similar

---

[2] *Court Decision* at *28-30.

objections from Certified Local Exchange Carriers ("CLECs") that such services are not toll services, the DPUC found that FX services are equivalent to toll services and must be treated accordingly for compensation purposes.[3] In short, the DPUC's Decision in Docket No. 01-01-29 defining intraLATA virtual FX traffic as a toll equivalent requires the DPUC to apply the same rationale in this proceeding, and, therefore, the DPUC cannot ignore its own previous decision on the matter and must define interLATA FX service as an interstate toll service as a matter law. Indeed, there is no legal or factual basis to justify a diametrically opposite result in this instance.

Third, instead of addressing SNET's claim that FX services are toll services as they are nothing more than a reverse toll, the DPUC inappropriately analyzed the term Telephone Toll in the parties' underlying agreement in finding that interLATA FX services are not Telephone Toll. The DPUC ignored the fact that FX services are indeed Telephone Toll services as it previously found in Docket No. 01-01-29, as it is the end-user that receives the call that is charged the toll, not the party originating the call. Thus, focusing solely on the originating end-user in analyzing whether FX services are toll services is overly simplistic and incorrect.

---

[3] Decision, January 30, 2002, at 43, copy attached hereto as Exhibit A.

### III. THE FEDERAL DISTRICT COURT DECISION

On September 30, 2003, the Federal District Court (Hall, J.) issued its decision regarding SNET's appeal of the DPUC's decision adjudicating a contract dispute between SNET and PaeTec arising from an Amendment to the parties' Interconnection Agreement. *See* Docket No. 01-08-19, *Petition of PaeTec Communications, Inc. for Resolution of Disagreement with The Southern New England Telephone Company*, dated May 1, 2002 ("Final Decision"). In the underlying administrative proceeding, the DPUC found that the parties' Interconnection Agreement and corresponding Amendment provided that interLATA FX traffic would be treated as local, subject to reciprocal compensation. The DPUC, however, failed to address several SNET arguments regarding the appropriate construction of the parties' Amendment and Interconnection Agreement.

In its decision, the Court rejected SNET's claim that the DPUC lacked jurisdiction to rule on the matter because the dispute involved interLATA traffic and found that the DPUC's decision did not violate federal law.[4] The Court, however, was concerned that the DPUC failed to address SNET's argument that Section 3.2.1 of the parties' Amendment excluded interLATA FX traffic from compensation.[5] Indeed, the

---

[4] *Court Decision* at *22.

[5] *Id.* at *28.

Court found that the DPUC was required to fully address this issue as the DPUC's decision would otherwise be arbitrary and capricious, violating federal law.[6]

The Court, however, was inclined to find that interLATA FX traffic was not a toll service because no separate charge is made to SNET subscribers. Recognizing that it was not its role to make such a finding and acknowledging the DPUC's comparative expertise on such issues, the Court declined to make such a finding. Instead, the Court stayed the appeal, permitting the parties to reopen the underlying administrative proceeding and have the DPUC review the impact of Section 3.2.1 on the parties' agreement.[7]

In sum, the Court directed the DPUC to make its independent determination as to whether interLATA FX traffic is equivalent to interLATA toll traffic. If, as SNET has argued throughout this proceeding, the DPUC found that interLATA FX traffic is interLATA toll, then interLATA FX traffic is indeed excluded from compensation, and SNET's Motion for Summary Judgment should be granted. On the other hand, if the DPUC concluded that interLATA FX traffic is not equivalent to interLATA toll, the traffic is not excluded from compensation, and PaeTec's Motion for Summary Judgment should be upheld. The DPUC, however, made no finding permitting either result, necessitating an addition stay.

---

[6] *Id.* at *28-29.

[7] *Id.*

## IV.  THE AMENDMENT AND SECTION 3.2.1

In January 2001, PaeTec and SNET executed an amendment to the Interconnection Agreement, entitled "Amendment to PaeTec Communications, Inc. Superseding Certain Compensation, Interconnection and Trunking Provisions" ("Amendment").  As titled, this Amendment only modified specific portions of the parties' Interconnection Agreement.  In relevant part, the Amendment modified the Interconnection Agreement to allow intraLATA foreign exchange to be compensated as local traffic.

Section 3.0 of the Amendment deals with compensable traffic.  Section 3.1 provides that:

> If PaeTec Communications, Inc. designates different rating and routing points such that traffic that originates in one rate center terminates to a routing point designated by PaeTec Communications, Inc. in a rate center that is not local to the calling party even though the called NXX is local to the calling party, such traffic ("Virtual Foreign Exchange" traffic) shall be rated in reference to the rate centers associated with the NXX prefixes of the calling and called parties' numbers, but treated as Local traffic for purposes of compensation.

Section 3.1 begins with the premise that this "virtual" FX traffic will be treated as Local traffic for purposes of compensation – even though the call actually terminates outside of the local calling area.  Section 3.2 explicitly provides that any local traffic eligible for reciprocal compensation "will be combined with traffic terminating to Internet Service

Providers (ISPs) *to determine the total Compensable Local Traffic* and the balances of traffic between the Parties." (Emphasis added.)

Section 3.2.1 takes this category of "total Compensable Traffic" and carves out exclusions. Section 3.2.1 specifically provides:

> In determining the total Compensable Local Traffic, *InterLATA toll* and IXC-carried intraLATA toll are excluded, and will be subject to Meet Point Billing as outlined in the interconnection agreement and applicable tariffs.

(Emphasis added). Thus, while Section 3.1 provides that Virtual FX traffic will be treated as Local (conceivably encompassing both intraLATA and interLATA), Section 3.2.1 provides that *all* interLATA toll and IXC-carried intraLATA toll are, in fact, excluded and that these exclusions (interLATA FX, interLATA ISP calls, and IXC-carried intraLATA toll including ISP ("1+") calls) would be subject to Meet Point Billing.

V.   **LAW AND ARGUMENT**

   A.   <u>The DPUC Failed to Comply With the District Court's Directive to Determine Whether InterLATA FX Services Are InterLATA Toll Services.</u>

In its Second Final Decision, the DPUC recognized that the Federal District Court directed that it address the impact of Section 3.2.1 of the parties' Amendment in analyzing the dispute but, nevertheless, failed to appreciate the import of the Federal District Court's order. In its September 30, 2003 Decision, this Court was concerned that the DPUC failed to address SNET's argument that Section 3.2.1 of the parties'

8

Amendment excluded interLATA FX traffic from compensation as such traffic was interLATA toll.[8] In sum, the Court directed the DPUC to make its independent determination as to whether interLATA FX traffic is equivalent to interLATA toll traffic.

In its Second Final Decision, the DPUC, however, avoided directly addressing whether interLATA FX services are equivalent to interLATA Toll services. Indeed, the DPUC never directly stated whether interLATA FX services are interLATA toll services. Rather, the DPUC couched its entire analysis in terms of the agreement and in large measure based its analysis on its previous finding that Section 3.0 subjected all FX services to reciprocal compensation. This analysis, however, merely begs the question and ignores the central tenet of SNET's argument that, indeed, if interLATA FX services are interLATA toll services, they are excluded from compensation.

**B.   The DPUC Improperly Ignored Its Own Previous Finding That FX Services Are Toll Equivalent Services.**

In its Second Final Decision, importantly, the DPUC ignored its own previous decision in Docket No. 01-01-29, where the DPUC properly found that intraLATA FX and FX traffic generally is interexchange in nature and is, therefore, equivalent to toll services. *See* Docket No. 01-01-29, Decision, Jan. 30, 2002; *see also* Docket No. 01-01-29RE01, *DPUC Investigation of the Payment of Mutual Compensation for Local Calls Carried over Foreign Exchange Service Facilities – FCC Verizon Order*, Decision, Nov. 13, 2002. Attached to PaeTec Communications, Inc.'s December 30, 2003 Motion to

---

[8] *Id.* at *28.

Terminate Initial Stay. Based on its finding that FX traffic is non-local in nature, the DPUC properly concluded that FX traffic is not subject to reciprocal compensation – identical to what SNET is arguing here.

> In its January 30, 2002 Decision, at p. 43, the DPUC specifically stated:
>
>> *Relative to FX service, the DPUC is of the opinion that it is an interexchange service* that is provided from an exchange that is different from one that normally serves the area in which the subscriber is located. ***In particular, FX service routes calls from one exchange to another. From a subscriber's point of view, FX is a toll substitute affording callers the benefit(s) of a local call.*** The DPUC indicated in its January 17, 1996 Decision in Docket No. 94-10-02, that the payment of mutual compensation would be required for all calls that originate and terminate within the same local calling area. While telephone calls made to FX service subscribers allow their customers to call without incurring toll charges, for purposes of payment of mutual compensation, such calls are non-local in nature; and therefore, they are not subject to mutual compensation.

(Emphasis added). It is evident from the DPUC's findings above that the DPUC has already concluded that virtual FX traffic, whether interLATA or intraLATA in nature, including ISP-bound traffic, is not local traffic, but rather is a toll service that is not subject to reciprocal compensation. Based on its previous finding that FX traffic is a toll substitute, it defies logic to conclude in its Second Final Decision that interLATA FX traffic is not equivalent to interLATA toll and, thus, is not subject to compensation per the parties' Amendment. Indeed, the DPUC cannot justify any other result than that interLATA FX traffic is toll in nature. Therefore, at a minimum, this Court should direct the DPUC to fully explain this glaring inconsistency.

**C.    The DPUC Incorrectly Applied the Definition of Telephone Toll in Finding that InterLATA FX Services Are Not Toll Services.**

In its Second Final Decision, the DPUC rejected its own previous analysis of FX traffic and essentially adopted PaeTec's overly simplistic analysis in finding that interLATA FX service is not a toll service. The DPUC based its decision on the definition of Telephone Toll service contained in the parties' underlying interconnection agreement. In the underlying agreement, Telephone Toll is defined, in accordance with the Telecommunications Act of 1996, as interexchange services where a separate charge is made. The DPUC reasoned that because the SNET customer placing the call does not incur a separate charge for making such FX calls that the service is not a toll service. Counter to the DPUC's tentative finding, however, it is irrelevant whether the SNET end-user is assessed a toll charge in determining whether its interLATA FX traffic is an interLATA toll service. Indeed, the originating end-user is never charged for placing FX calls, regardless of whether such FX services are provided by SNET or any other competitor. Rather, the toll is charged to the end-user that purchased the FX service to permit other consumers to make toll free calls to the end-user. Thus, FX services are reverse toll services as there is a separate charge for connecting such calls. The charge, however, is not on the originating end-user, but rather on the end-user that establishes the FX service to receive such calls.

## VI. CONCLUSION

Based on the foregoing, SNET respectfully requests that this Court: (1) extend the initial stay as the "DPUC failed to specifically address the central question posed in the Court's September 30, 2003 decision – whether InterLATA FX services are akin or otherwise the equivalent to toll services – in its December 17, 2003 Second Final Decision; (2) direct the DPUC to properly address this Court's directives contained in its September 30, 2003 decision; and (3) deny PaeTec's Renewed Motion for Summary Judgment because it is premature as the DPUC failed to properly address the Court's September 30, 2003 directive and is incorrect as the DPUC failed to properly analyze the remaining issue currently before this court.

                    Respectfully submitted,

                    **THE PLAINTIFF,**
                    **THE SOUTHERN NEW ENGLAND**
                    **TELEPHONE COMPANY**

By: _____
      Timothy P. Jensen
      Fed Bar No. ct 18888
      TYLER, COOPER & ALCORN, LLP
      205 Church Street
      P.O. Box 1936
      New Haven, Connecticut  06510-1910
      Telephone:  (203) 784-8200
      Facsimile:  (203) 789-2133
      E-Mail:  jensen@tylercooper.com

George M. Moreira
Fed Bar No. ct 15234
Attorney
The Southern New England
Telephone Company
310 Orange Street
New Haven, Connecticut  06510
Telephone:      (203) 771-0902
Facsimile:  (203) 771-6577
E-Mail:  george.m.moreira@sbc.com

*Counsel for The Southern New England Telephone Company*

# EXHIBIT A